OPINION
Defendant-appellant Linda Holden appeals from a judgment for unpaid rent. Holden contends that the trial court erred by excluding evidence, and failing to have knowledge of the law. She also contends that the trial court erred by "faulting" her for not paying the rent into court.
From our review of the record, we find that the trial court did not abuse its discretion regarding evidentiary issues. Furthermore, we find Holden's claim that the trial court was ignorant of the law to be without merit. Finally, we do not find any error in the judgment rendered by the trial court. Accordingly, the judgment of the trial court is Affirmed.
 I
Plaintiff-appellee Dayton Investment Group, doing business as The Villa of West Carrollton (hereinafter "the Villa"), owned an apartment complex located in Montgomery County, Ohio. Defendant-appellant, Linda Holden, leased an apartment from the Villa.
In February, 1999, the Villa filed a complaint in forcible entry and detainer against Holden. The complaint sought restitution of the apartment premises as well as unpaid rent. On March 16, 1999, the trial court entered the requested order of restitution; the issue of unpaid rent was continued to a later date.
Holden filed an answer and counterclaim. In the answer, Holden denied that she owed any rental payments. In the counterclaim, Holden alleged that the roof of her apartment caved in, causing the premises to become unhabitable and resulting in damage to her personal belongings. She sought $800 for damages to her personal belongings. She also claimed that she was entitled to payment of $450 for "excessive electric bills" incurred as a direct consequence of the roof damage. Finally, she sought to recover the rent paid for the month of January, as well as her rental deposit of $250.
The Villa then filed an amended complaint seeking additional damages it claimed Holden caused by: (1) keeping pets in the apartment without the approval of the Villa management; (2) subletting the apartment without obtaining approval; and (3) failing to notify it of the roof problems.
A trial was held on March 28, 2000. At the trial, Holden, appearingpro se, attempted to introduce seven documents as exhibits in support of her case. The trial court found that all of the documents constituted inadmissible hearsay, and excluded them. Holden did not present any evidence to support her claim of damages to her personal belongings or payment of electric bills. Furthermore, she did not present any evidence to support her claim that she had paid a rental deposit of $250, or that she had paid rent for the month of January.
At the conclusion of the hearing, the trial court awarded judgment to the Villa in the amount of $1,095.75, representing monies owed for rent due in January, February and part of March after, crediting Holden with payment of the rental deposit.[1] From this judgment Holden appeals.[2]
 II
Holden's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY REJECTING OUT-OF-HAND ALL EVIDENCE SUBMITTED BY THE DEFENSE INCLUDING SELF-AUTHENTICATING EXTRINSIC DISCLOSURE REQUIREMENTS JOINTLY PREPARED BY THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AND THE ENVIRONMENTAL PROTECTION AGENCY AND ADDITIONALLY REJECTING OFFICIAL LOCAL GOVERNMENT ORDERS.
 Holden contends that the trial court erred by excluding her exhibits. In support, she argues that the exhibits did not, as the trial court found, constitute hearsay because they were self-authenticating.
Holden attempted to introduce the following documents in evidence: (1) a U.S. Department of Housing and Urban Development pamphlet dated August 21, 1996 entitled "Guidance on the Lead-Based Paint Disclosure Rule"; (2) a Notice of Violation issued by the Montgomery County Health District dated January 15, 1999, which indicates that the ceiling had collapsed in the apartment bedrooms; (3) a Property Maintenance Exterior Inspection report issued by the City of West Carrollton indicating roof damage; (4) a correction order issued by the City of West Carrollton dated March 15, 1999; (5) a correction order dated January 26, 1999 from the City of West Carrollton; (6) an unsigned Property Maintenance Interior Inspection report regarding the property; and (7) a letter to the Villa from the West Carrollton Building and Zoning Inspector dated April 19, 1999.
"The decision of whether or not to admit evidence rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion." Wightman v. Consolidated Rail Corp. (1999),86 Ohio St.3d 431, 437, citing Peters v. Ohio State Lottery Comm.
(1992), 63 Ohio St.3d 296, 299. In this case, we find that Evid.R. 803(8)(b), which excepts from the hearsay rule "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth * * * (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report * * *" is applicable to exhibits two through seven.
Generally, if a public record is self-authenticating under Evid.R. 902 no foundation is necessary. Weissenberger's Ohio Evidence § 803.105. However, in this case, we find no provision in Evid.R. 902 under which Exhibits two through seven would fall.
Because these exhibits are not self-authenticating under Evid.R. 902, Holden needed to present some extrinsic evidence demonstrating that they were what they purported to be. After reviewing the record, we conclude that Holden failed to present even the minimal foundational testimony necessary to support the introduction of these exhibits. While we note that the appearance, contents, and substance of some of the documents would tend to indicate authenticity, the record is devoid of any testimony regarding where Holden procured the documents, how they came into her possession, or even that the documents are in fact what Holden purports them to be. Therefore, we cannot say that the trial court abused its discretion by denying admission of exhibits two through seven.
We now turn to the issue of whether exhibit one, the HUD pamphlet, was properly excluded. According to Holden, the pamphlet sets forth applicable federal law on the disclosure of lead contamination in rented housing. She contends that the disclosure law requires that landlords whose rental units were built prior to 1972 provide their tenants with a mandatory lead contamination disclosure form, which the tenants must sign prior to executing a lease agreement.
We find that Holden is correct in her claim that the pamphlet is self-authenticating pursuant to Evid.R. 902(5). However, we find that while the trial court improperly rejected it on hearsay grounds, the document was properly excluded because it was irrelevant to the proceedings. Specifically, Holden failed to produce any evidence that the lead contamination laws are applicable to her apartment, because she failed to demonstrate that the apartment was constructed prior to 1972.
We find that the trial court did not abuse its discretion in excluding the exhibits proffered by Holden. Accordingly, the First Assignment of Error is overruled.
 III
The Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY FAILING TO HAVE KNOWLEDGE OF THE FEDERAL LAW REQUIRING DISCLOSURE OF POSSIBLE LEAD CONTAMINATION IN ANY HABITABLE STRUCTURE BUILT BEFORE 1972.
 In this Assignment of Error, Holden argues that "* * * it defies belief that the Court, the attorney, and the Plaintiff do not have knowledge of the law." Specifically, she refers this court to the HUD pamphlet, designated exhibit one, which as stated above, sets forth the federal law regarding disclosure of lead contamination in "residential units built prior to 1972."
We find no support in the record for the claim that the trial court lacked knowledge of the laws to which she refers. Furthermore, it appears that Holden's argument focuses more on her claim that the trial court should have taken judicial notice of the pamphlet, and then should have concluded, as a matter of law, that since the Villa did not provide her with a lead disclosure statement to sign, the lease executed between the parties is "stillborn and unenforceable." As stated above, the record is devoid of any evidence to establish that the lead disclosure laws apply to this case. Therefore, we find no error.
Accordingly, the Second Assignment of Error is overruled.
 IV
In her Third Assignment of Error, Holden argues as follows:
 THE TRIAL COURT COMMITTED GRIEVOUS ERROR BY FAULTING THE DEFENDANT FOR NOT PAYING RENT INTO THE COURT AS REQUIRED BY LAW, WHEN THE LAW ALLOWS THE OPTION OF TERMINATING THE RENTAL AGREEMENT.
 In this Assignment of Error, Holden contends that the trial court erred because it found that she had not paid rent into court. She appears to argue that she cannot be held liable for payment of rent because the apartment ceiling collapsed, thereby rendering the premises unhabitable. She further contends that she cannot be forced to pay rent into court when the law permits her to terminate the lease agreement.
The portion of the trial court's judgment to which Holden objects is as follows:
 The Defendant testified that she moved from the premises in the early days of January 1999 after the ceiling fell in her bedroom. She was advised by the landlord that they could not repair the flat roof until the weather warmed up.
 Ms. Holden felt this was a health and safety violation and moved from the apartment. However, she did not pay any rent into the Court as required by law. Further, as set forth above, Defendant's daughter remained in the apartment until she was evicted by the Bailiff of this Court on March 25, 1999. (Emphasis added).
 From our review of the entire judgment, we conclude that the trial court was merely noting, correctly, that Holden failed to take advantage of the provisions of R.C. 5321.07. This statute, if properly utilized, provides tenants with remedies for a landlord's failure to fulfill any obligations (such as providing a habitable residence) after receiving written notification thereof from the tenant. The statute permits the tenant to pay rent into the court, petition the court for an order directing the landlord to remedy the condition, or to terminate the lease. The record shows that the lease was not terminated, as evidenced by the fact that Holden's daughter continued to live in the apartment. The record also shows that Holden did not pay any rent into court, and did not file an application with the court to remedy the ceiling problem.
We note that Holden does not assign as error a claim that the judgment is not supported by the evidence. However, even if it were, we would be constrained to uphold the judgment. According to the testimony of the representative for the Villa, Holden failed to pay rent for January, February and March, 1999. Holden contends that she paid rent for January; however, she failed to present any evidence to support this contention. The trial court, which was in the best position to determine credibility, found that Holden had failed to make rent payments for January, February and twenty-five days in March.
The issue then is whether the Villa was entitled to the rent payments based upon Holden's claim that the apartment was unhabitable. The only admissible evidence in the record to support the claim that the premises were unhabitable is Holden's testimony that she moved out of the apartment because of roof damage. However, the record shows that Holden's daughter continued to live in the apartment until the date of the eviction.[3] The fact that Holden's daughter continued to live in the apartment undermines her claim that the apartment was rendered uninhabitable. Therefore, we cannot say that the trial court erred by failing to find that the premises were uninhabitable or by awarding the Villa rent for the months that the apartment was occupied.
The Third Assignment of Error is overruled.
 V
All of Holden's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and WOLFF, J., concur.
[1] Although the trial court found that the parties failed to present any evidence regarding the payment of any rental deposit, it stated that it would "assume" that the deposit was made.
[2] Holden prosecutes this appeal pro se.
[3] We note that Ms. Holden also contends that there was no testimony offered to support the trial court's finding that her daughter remained in the apartment after the ceiling collapsed. However, a review of the transcript discloses testimony by Ms. Holden to support the finding.